IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 10-cv-01944-LTB-BNB

JULIE JACOBSEN,

        Plaintiff,

v.

DILLON COMPANIES, INC. d/b/a KING SOOPERS,

        Defendant.

_____

ORDER
_____

This matter is before me on cross motions for summary judgment filed by Plaintiff

Julie Jacobsen [Plaintiff's Motion for Partial Summary Judgment - **Doc # 66**], and Defendant

Dillon Companies, Inc. d/b/a  King Soopers ("King Soopers") [Motion for Summary Judgment

and Brief in Support – **Doc #67**].  Plaintiff seeks summary judgment in her favor on her sole

remaining claim against King Soopers, her former employer, for failing to provide her with

reasonable accommodations for her disability in violation of the Americans with Disabilities Act

(hereinafter "ADA"), 42 U.S.C. § 12101, *et seq.*  In its motion, King Soopers seeks judgment as

a matter of law in its favor and, in turn, dismissal of this case.  Oral arguments will not

materially aid in the resolution of these motions.  After consideration of the parties' briefs, and

for the reasons stated below, I DENY both motions.

## I.  UNDERLYING FACTS

Plaintiff was hired as a Retail Investigator for King Soopers grocery stores on July 7,

2009.  After completing her initial training, she began working full-time, as a probationary

employee, at King Soopers stores in August 2009.

In September of 2009, Plaintiff  was diagnosed with breast cancer.  On or before September 18, 2009, Plaintiff informed her supervisor, Tom Conlin, of her diagnosis.  On September 30, 2009,  Plaintiff told Mr. Conlin that she needed to undergo surgery on October 2, 2009, for placement of a port through which she would receive chemotherapy for treatment of her cancer, and that she would not be able to report to work for the two weeks following her surgery – or until October 16, 2009.

Following her surgery, Dr. Stephen Johs faxed a Physician's Statement to Mr. Conlin on October 5, 2009, confirming that Ms. Plaintiff would not be able to return to work (as they had discussed) for the two weeks following her surgery, or until October 16, 2009.  Mr. Conlin, in turn, sent this statement to Stephanie Bouknight, the Director of Labor and Employee Relations at King Soopers.  At that time, Ms. Bouknight recommended that Plaintiff be terminated as soon as she returned to work on the basis that she was unable to "fulfill the terms of her probation while she is out."

On October 13, 2009, in a second Physician's Statement, Dr. Johs requested that Plaintiff be permitted one additional week off of work for recovery, or until October 23, 2009, and that she "may [need] time off for chemotherapy."  After Mr. Conlin received the second statement, he spoke with his supervisor, Ms. Donna Colao, and they called Ms. Bouknight to discuss it.  At that time Ms. Bouknight advised them to terminate Plaintiff before she returned to work.  Mr. Conlin and/or Ms. Colao then conferred with the Director of Security regarding Ms. Bouknight's recommendation to terminate Plaintiff.  The Director approved the recommendation.  On October 15, 2009, Mr. Conlin called Plaintiff and terminated her employment with King Soopers.

Thereafter, Plaintiff filed this lawsuit.  In her remaining claim for relief she asserts that

King Soopers violated the ADA by terminating her without accommodating her disability.  She

seeks all damages available under the statute, including back-pay, front-pay, reinstatement to her

position, emotional distress damages, compensatory damages to include medical bills and

expenses, punitive damages, injunctive relief, attorney fees and costs, and expert witness fees.

## II.  STANDARD OF REVIEW

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether

trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Fed. R. Civ. P.

56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to

interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law.  The non-moving party has the

burden of showing that there are issues of material fact to be determined.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party seeking summary judgment bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, interrogatories, and admissions on file together with affidavits, if any, which it

believes demonstrate the absence of genuine issues for trial.  *Id.* at 323; *Mares v. ConAgra

Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).  Once a properly supported summary

judgment motion is made, the opposing party may not rest on the allegations contained in his

complaint, but must respond with specific facts showing the existence of a genuine factual issue

to be tried.  *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e).  These

specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c),

3

except the pleadings themselves." *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 324.

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Id.* at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Id.* at 252; *Mares v. ConAgra Poultry Co., supra,* 971 F.2d at 494. The parties' cross-motions must independently satisfy the requirements of Rule 56(c). *Renfro v. City of Emporia*, 948 F.2d 1529, 1534 (10th Cir. 1991)(cross-motions for summary judgment does not relieve court of obligation to determine if genuine issue of material fact exists).

### III.  LAW

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). Such discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee." 42 U.S.C. § 12112(b)(5)(A). To establish a *prima facie* case of discrimination under the ADA, an employee must show:  (1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she was discriminated against because of her disability. *Mason v. Avaya Comm., Inc.*, 357 F.3d 1114, 1118 (10th Cir. 2004).

## IV. ANALYSIS

At issue is whether Plaintiff can make out her *prima facie* case.  King Soopers does not

dispute that Plaintiff is disabled within the meaning of the ADA, for the purposes of summary

judgment determination.  Rather, King Soopers contends that it is undisputed that Plaintiff is not

qualified – both with or without reasonable accommodation – to perform the essential functions

of the job held or desired, and thus it is entitled to summary judgment.  Plaintiff argues the

opposite – that the facts are undisputed that she was qualified for her job, but King Soopers

discriminated against her by failing to make reasonable accommodations for her disability and/or

by failing to engage in the ADA's interactive process to do so.

## A.  QUALIFIED INDIVIDUAL

The ADA defines a "qualified individual with a disability" as "an individual with a

disability who, with or without reasonable accommodation, can perform the essential functions

of the employment position that such individual holds or desires." *Tate v. Farmland Industries,*

*Inc.,* 268 F.3d 989, 992-93 (10th Cir. 2001)(quoting 42 U.S.C. § 12111(8)).  Courts employ a

two-part analysis to determine whether an individual is qualified:

> First, the court determines whether the individual can perform the essential
> functions of the job. . . . Second, if (but only if ) the court concludes that the
> individual is unable to perform the essential functions of the job, the court
> determines whether any reasonable accommodation by the employer would
> enable her to perform those functions.

*Mason v. Avaya Comm., supra,* 357 F.3d at 1116 (*citing Davidson v. Am. Online, Inc.*, 337 F.3d

1179, 1190 (10th Cir. 2003) & 42 U.S.C. § 12111(8)).

### Otherwise-Qualified

As an initial condition or prerequisite to performing the essential functions of a position,

an individual must first satisfy "the requisite skill, experience, education and other job-related requirements of the employment position such individual holds . . .".  *Tate v. Farmland, supra,* 268 F.3d at 993 (*quoting* 29 C.F.R. § 1630.2(m)); *see also Wilkerson v. Shinseki,* 606 F.3d 1256, 1263 (10th Cir. 2010)).   King Soopers argues that Plaintiff was not "otherwise qualified" to perform the position of Retail Supervisor in that she was unable to complete her probationary period in order to demonstrate that she would be a successful Retail Investigator; specifically, that she could meet the productivity expectations of apprehending shoplifters.  Thus, she did not meet the prerequisite requirement of successful completion of probation in order to be otherwise qualified for the position.

Plaintiff argues, in response, that successful completion of probation cannot be deemed a "job-related requirement" of a position.  Such requirements are defined as "the prerequisites for the position, such as . . . the appropriate educational background, employment experience, skills, licenses, etc."  App'x to 29 C.F.R. 1630, at 393 (EEOC Interpretive Guidance to the ADA, discussing § 1630.2(m)).  *See e.g. Wilkerson v. Shinseki, supra,* 606 F.3d at 1263 (upholding the trial court's determination that the plaintiff was not otherwise qualified for employment as a boiler room operator because, due to his obesity, he failed to meet the minimum physical requirements of the position); *Tate v. Farmland Industries*, *supra*, 268 F.3d at 996 (ruling that a truck driver was not qualified for his job when he was no longer physically qualified to operate a commercial vehicle, due to his history of seizures, under established safety standards); *Bay v. Cassens Transport Co.*, 212 F.3d 969 (7th Cir. 2000)(ruling that a truck driver was not a qualified individual, under the definition in 29 C.F.R. § 1630.2(m), because he could no longer obtain a DOT certification required of drivers by federal regulation).

I agree with Plaintiff that her inability to complete the initial probationary period of her employment, in order to demonstrate ability or aptitude to apprehend shoplifters, cannot be defined as prerequisite to the job as contemplated by 29 C.F.R. § 1630.2(m).  King Soopers attempts to re-characterize Plaintiff's job performance as a job requirement.  Whether a plaintiff possesses the prerequisite job requirements cannot include that he or she will be able to successfully perform that position.  Rather, the prerequisite job requirements necessary to be "otherwise qualified" for a position  relate to background credentials, licensing requirements, or other objectively defined standards.  It is undisputed that Plaintiff was otherwise qualified for the position that she held – a Retail Investigator who was still in her probationary period.  I reject King Soopers' argument to the extent it maintains that Plaintiff was not otherwise qualified to be a "permanent" Retail Investigator.

I conclude that failure to successfully compete a period of probation cannot be deemed a job-related qualification of the position under 29 C.F.R. § 1630.2(m).  *See generally Ricks-Lankford v. Texas Dept. of Assistive and Rehabilitative Services,* 2011 WL 5040439 (W.D. Tex. Oct. 24, 2011) (slip copy)(ruling that a requirement that a plaintiff meet her case load "conflates whether the [p]laintiff was qualified for her position [under 29 C.F.R. § 1630.2(m)] with the question of whether she was performing her duties properly or well").

**Essential Functions**

King Soopers next argues that even if Plaintiff was "otherwise qualified" for the position, she cannot prove that she could perform the essential functions of the job of Retail Investigator.  Specifically, King Soopers argues that Plaintiff's disability prevented her from performing the essential functions of physically apprehending suspect shoplifters, and of regularly working a

40-hour work week.

Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). "Evidence considered in determining whether a particular function is essential includes: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the work experience of past incumbents in the job." *Wells v. Shalala*, 228 F.3d 1137, 1144 (10th Cir. 2000)(*citing* 29 C.F.R. § 1630.2(n)(3)). The plaintiff bears the burden of showing she is able to perform the essential functions of her job. *Mason v. Avaya Comm.*, *supra*, 357 F.3d at 1119 (*citing US Airways, Inc. v. Barnett,* 535 U.S. 391, 400, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002)).

While Plaintiff maintains that there are disputed issues of material fact as to whether these are, in fact, essential functions of the Retail Investigator position, she concedes for the purpose of these motions that after her port placement surgery she was physically unable to apprehend suspects until such time as the port was removed. As such, she admits that she was unable to perform an essential function of the job of Retail Investigator during the time that her port was in place.

**B. REASONABLE ACCOMMODATION**

Plaintiff argues, however, that even if she was unable to perform an essential function of the position of Retail Investigator, it is undisputed her disability could have been reasonably accommodated. Specifically, she argues that it is undisputed that she could have been provided

with scheduling modification, unpaid leave, or transfer/reassignment to a vacant position.

Under the ADA, when an individual has a disability, her employer must accommodate the limitations which the disability causes to the extent that the accommodation is "reasonable." *Hines v. Chrysler Corp.,* 231 F.Supp.2d 1027, 1037 (D.Colo. 2002)  The ADA provides that reasonable accommodation "may include . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, . . . and other similar accommodations for individuals with disabilities."  42 U.S.C.A. § 12111(9)(B).  Whether a particular accommodation is reasonable depends on the circumstances of the individual case.  *Hines v. Chrysler, supra,* 231 F.Supp.2d at 1037 (*citing Kuehl v. Wal–Mart Stores, Inc.*, 909 F.Supp. 794, 802 (D.Colo. 1995)).

On a motion for summary judgment, the employee must first demonstrate that an accommodation appears "reasonable on its face."  *Mason v. Avaya Comm., supra,* 357 F.3d at 1122 (citations omitted).  The burden of production then shifts to the employer to present evidence of its inability to accommodate. *Id.*  If the employer presents such evidence, the employee has the burden of coming forward with evidence concerning her individual capabilities and suggestions for possible accommodations to rebut the employer's evidence. *Id.*  Whether an accommodation is reasonable under the ADA is a mixed question of law and fact. *Id.* (*citing Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955, 967 (10th Cir. 2002)).

**Scheduling Modification**

Plaintiff first argues that she could have been accommodated by being given scheduling modification or intermittent, recurring leave for her chemotherapy treatments – which she maintains would have been as much as five consecutive days every three weeks – and by being

9

partnered with another employee who could physically apprehend shoplifters.

I find that whether intermittent leave/schedule modifications would have been a

reasonable accommodation, under the circumstances presented here, is a question for the jury as

a reasonable factfinder could find that such accommodation was reasonable.  *See* 42 U.S.C. §

12111(9)(B)(defining reasonable accommodation to include "modified work schedules"); *see*

*also Boutin v. Home Depot U.S.A., Inc.,* 490 F.Supp.2d 98, 105 (D.Mass. 2007)(*citing Ward v.*

*Mass. Health Research Inst., Inc.,* 209 F.3d 29, 34 (1st Cir. 2000) ("reasonable accommodations

may include job restructuring and part-time or modified work schedules").

However, I agree with King Soopers that such accommodation – in the form of

reallocating the function of physically apprehending shoplifters to another retail investigator for

an extended period of time – would not be reasonable as a matter of law.  Partnering Plaintiff

with another employee would, in essence, eliminate the essential function of the Retail

Investigator position and, as such, is not reasonable.  *See Frazier v. Simmons*, 254 F.3d 1247,

1261 (10th Cir. 2001)(holding that the ability to engage in violent activity, to run, and to carry a

firearm are essential functions of an investigator's job, and that permanently reassigning these

functions to another investigator constitutes a restructuring of the job that is not a reasonable

accommodation); *see also Valdez v. McGill,* 2012 WL 432635 (10th Cir. February 13, 2012)(not

selected for publication)("requiring an employer to reallocate job duties to change the essential

functions of a job is not a reasonable accommodation under the ADA")(citations omitted).

**Unpaid Leave**

Plaintiff also asserts that she could have been provided with unpaid medical leave until

she had finished her chemotherapy and the port was removed, which she indicates would have

been for approximately five months – from the date of her port-placement surgery in October of 2009 until the port could have been removed in February of 2010.

King Soopers first asserts, in response, that Plaintiff did not ask for a specific amount of leave, and indeterminate leave is not a reasonable accommodation. *See Cisneros v. Wilson*, 226 F.3d 1113, 1129 (10th Cir. 2000), *overruled on other grounds by Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Because "the term 'reasonable accommodation' refers to those accommodations which presently, or in the *near future*, enable the employee to perform the essential functions of his job," a request for indefinite leave cannot constitute reasonable accommodation. *Id.* (*citing Hudson v. MCI Telecommunications Corp.,* 87 F.3d 1167, 1169 (10th Cir. 1996)).

In this case it is undisputed that in September of 2009,  Plaintiff informed Mr. Conlin of her cancer diagnosis and her immediate need for limited unpaid time off (initially, two-weeks) for the post placement surgery and recovery.  It is likewise undisputed that at that time they discussed her upcoming need for schedule adjustments and/or time off for her chemotherapy treatment.  Although it is disputed whether they discussed the specific duration of the chemotherapy treatments, Plaintiff has provided in her affidavit that at that time she "also informed Mr. Conlin that I would need to undergo chemotherapy treatment following the placement of the port and that the chemotherapy could last between four and six month [and] I told Mr. Conlin that I would need chemotherapy treatment approximately once every three weeks." [Doc # 74 Ex. 4]

As an initial matter, I reject King Soopers' contention that I should disregard Plaintiff's affidavit as a "sham" on the basis that it directly contradicts the other evidence of record.  King

Soopers relies on the fact that Plaintiff admitted to initially telling Mr. Conlin that she was not

sure what would be happening with regard to her cancer treatment, as well as her admission that

the physician statements she provided failed to inform King Soopers of the duration of the

chemotherapy treatment.  She also answered "correct" when asked in her deposition to confirm

that the physician statement dated October 13, 2006 noted that she "would have to have time off

for chemotherapy and that was indeterminate, correct?"  [Doc #74, Ex. A-4, pg. 72]  Plaintiff's

prior testimony was not inconsistent with her affidavit; it was only that her doctors did not

indicate to King Soopers the expected duration of her treatment, not whether she informed Mr.

Conlin thereof.  My review of the evidence does not reveal that Plaintiff's affidavit is contrary to

her prior sworn statements or that it "constitutes an attempt to create a sham fact issue" on

summary judgment.  *See Burns v. Board of County Commr's of Jackson County*, 330 F.3d 1275,

1282 (10th Cir. 2003)(ruling that an affidavit  that conflicts with the affiant's prior sworn

statements may be disregarded when it attempts to create a sham fact issue)(*quoting Franks v.

Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986)).

King Soopers further argues that under the circumstances here – in which Plaintiff was a

probationary employee entitled to no leave under its policies, and that she failed to provide King

Soopers with "any specific or reliable information regarding her prognosis, the nature of

expected duration of her cancer treatment, when her port would be removed or when (or even if)

her double mastectomy might occur, or how long she would be absent from work if a

mastectomy did occur" – providing Plaintiff with unpaid medical leave until she would be able

to return to work would be unreasonable as a matter of law.

The Tenth Circuit has indicated that it is well-settled that a request for leave in order to

recover from an injury or illness may be a reasonable accommodation if such a request allows

the employee to perform the essential functions of the job in "the near future."  *Cisneros v.*

*Wilson*, *supra*, 226 F.3d at 1129.  In *Rascon v. U.S. West Communications, Inc.,* 143 F.3d 1324,

1334 (10th Cir. 1998), the Tenth Circuit upheld the district court's determination that a four-

month leave of absence was a reasonable accommodation when the employee told the employer

of his course of treatment for post-traumatic stress disorder, that his prognosis was good, and the

expected duration of his treatment.  In so doing, the Court distinguished the case of *Hudson v.*

*MCI Telecommunications, supra,* 87 F.3d at 1168, in which the plaintiff diagnosed with carpal

tunnel syndrome failed to present evidence of the expected duration of her impairment, her

course of treatment, or a prognosis.  *Rascon v. U.S. West, supra,* 143 F.3d at 1324; *see also*

*Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1110 (10th Cir. 1999)(upholding the district court's

conclusion that the plaintiff sought an indefinite period of medical leave when he advised the

employer that he would never be able to return to his former position, and could not advise when

and under what conditions he could return to any work); *Smith v. Blue Cross Blue Shield of*

*Kansas, Inc.,* 102 F.3d 1075, 1077 (10th Cir. 1996)(affirming the determination of no reasonable

accommodation when the plaintiff was on "open-ended medical leave" and she "had presented

no evidence of the expected duration of her complete disability"); *Vice v. Blue Cross and Blue*

*Shield of Oklahoma,* 113 Fed.Appx. 854, 856 (10th Cir. 2004)(not selected for publication)

(upholding the determination of no reasonable accommodation necessary when the plaintiff

never informed her employer that she was willing to return to work, much less requested any

accommodation of her mental condition that would have enabled her to do so).

King Soopers refers me to *Boykin v. ATC/VanCom of Colorado, L.P.* ,247 F.3d 1061,

1064 (10th Cir. 2001), in which the Tenth Circuit ruled that reasonable accommodation does not

obligate an employer to place a disabled employee on indefinite leave until a position for which

he is qualified opens.  Specifically, after noting that such determinations of reasonableness must

be made on a case-by-case basis, the Court ruled that the employer did not violate the ADA

when it failed to offer its disabled employee a newly-created position when it became available

six months after his termination under 29 C.F.R. pt. 1630, App. § 1630.2( o)(providing that

employers should reassign an employee to a position if it becomes "vacant within a reasonable

amount of time").  *Id.* at 1065.  King Soopers also refers me to *Valdez v. McGill, supra*, in which

the Tenth Circuit recently ruled, in an opinion not selected for publication, that additional leave

time was not a reasonable accommodation for an employee that sought such leave, but was

uncertain if or when he would  be able to return to work.  2012 WL 432635.  Because the record

there indicated it was uncertain if or when the plaintiff would sufficiently recover from his

impairments of bronchitis, colon cancer, and fatigue, in order to be able to return to work, the

Court ruled that "[i]n light of his diagnosis with colon cancer, his frequent absences, and his

inability to return to work according to the earlier physician's note, it was uncertain he would be

able to return to work on March 1, 2007 [and ...] even if he had been able to return to work,

neither note stated the impairment from his cancer and other conditions would be resolved at that

time." *Id.*

I conclude that a material issue of fact exists as to what extent Plaintiff was aware of and

informed King Soopers of the duration of her impairment or cancer treatment prior to her

termination.  The record evidence is disputed as to whether or not she told Mr. Conlin that her

chemotherapy would last between four and six months.  King Soopers argues that it is

undisputed that Plaintiff would have actually needed more than five months of leave based on

her deposition testimony that her port was not actually removed until April 2010 when she

underwent surgery for a double mastectomy, and that she was not able to work for "several

months" thereafter.  However, the determination of "whether an individual is a 'qualified

individual with a disability' must be made as of the time of the employment decision."  *Cisneros*

*v. Wilson, supra,* 226 F.3d at 1129 (*citing Nowak v. St. Rita High Sch.,* 142 F.3d 999, 1003 (7th

Cir.1998).  To the extent that Plaintiff needed additional surgery in the future for treatment of her

impairment cannot be reviewed in retrospect to determine if accommodation at the time was

reasonable.

Therefore, while I agree with King Soopers' assertion that they were not required to wait

indefinitely to determine that full extent of her diagnosis, treatment, and recovery, the time to

assess such issues was extremely limited in this case.  The facts of this case are highly disputed

as to whether either Plaintiff or King Soopers was aware of the duration of her impairment,

treatment, or prognosis.  *See Cisneros v. Wilson*, *supra,* 226 F.3d at 1130 (requiring an employee

to provide the expected duration of his or her "impairment" rather than the duration of the leave

request).   As such, I conclude that Plaintiff has met her burden that the proposed

accommodation of unpaid medical leave is facially reasonable, and that the disputed issues of

fact are sufficient for a jury determination as to whether an accommodation of unpaid medical

leave was reasonable under the circumstances.

## Reassignment/Transfer

Plaintiff also argues, in the alternative, that King Soopers could have provided her with

reasonable accommodation by transferring or reassigning her to a vacant position.  I likewise

conclude that Plaintiff  has met her burden of a facially reasonable accommodation in the form

of a transfer or reassignment.

Plaintiff maintains that she first asked King Soopers for a transfer – in the form of a

"lateral move" at substantially the same rate of pay – on September 8, 2009, prior to learning of

her cancer diagnosis, and then again sought a transfer "to another position within King Soopers"

on September 19, 2009, when she informed Mr. Conlin of her breast cancer diagnosis.  In

addition, Plaintiff indicates in her affidavit that "[o]n or about October 13, 2009, I spoke again to

Mr. Conlin and also to Ms. Colao about a possible transfer to another position . . . [and] I made it

clear that I was interested in any available position" so that she could keep her health insurance

benefits.  [Doc # 74 Ex. 4]   King Soopers argues, in response, that although it is hotly disputed

as to whether or when Plaintiff sought to be transferred or re-assigned, she has not proved her

*prima facie* case requirement  that she was qualified and/or able to perform another available

position at King Soopers.

The ADA provides that  a "qualified individual with a disability" includes a disabled

employee who desires and can perform, with or without reasonable accommodation, an available

reassignment job within the company, even though she is unable to perform her existing job.

*Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.,* 180 F.3d 1154, 1161 (10th Cir. 1999)(*citing*

42 U.S.C. § 12111(8)); *see also Valdez v. McGill, supra,* 2012 WL 432635 (ruling that if

employee is unable to perform her job, with or without accommodation, an employer must

consider reassignment to an available position as one form of accommodation).

The elements of a *prima facie* ADA violation based on a failure to accommodate by

reassigning a disabled employee are:

(1) The employee is a disabled person within the meaning of the ADA and has made any resulting limitations from his or her disability known to the employer;

(2) The preferred option of accommodation within the employee's existing job cannot reasonably be accomplishe[d;]

(3) The employee requested the employer reasonably to accommodate his or her disability by reassignment to a vacant position, which the employee may identify at the outset or which the employee may request the employer identify through an interactive process, in which the employee in good faith was willing to, or did, cooperate;

(4) The employee was qualified, with or without reasonable accommodation, to perform one or more appropriate vacant jobs within the company that the employee must, at the time of the summary judgment proceeding, specifically identify and show were available within the company at or about the time the request for reassignment was made; and

(5) The employee suffered injury because the employer did not offer to reassign the employee to any appropriate vacant position.

*Duvall v. Georgia-Pacific Consumer Products, L.P.*, 607 F.3d 1255, 1260 (10th Cir. 2010)

(*quoting Smith v. Midland Brake, supra,* 180 F.3d at 1179).  However, the overarching principle

that all accommodations under the ADA must be governed by the statutory modifier of

reasonableness remains.  *Smith v. Midland Brake, supra,* 180 F.3d at 1171.

King Soopers argues that Plaintiff has not shown that she was qualified, with or without

reasonable accommodation, to perform one or more specific vacant jobs that were available at

the time of her request to transfer.  In response, Plaintiff refers me to 11 positions (most of which

she contends had multiple vacancies) at King Soopers for which she was "plainly"qualified.

She further asserts that she could have performed the essential functions of these positions – with

reasonable accommodation of periodic time off for chemotherapy treatment over a four to six

month period – after she recovered from her port placement surgery because none of the

available positions required physical contact, her only limitation.

King Soopers responds that Plaintiff cannot show that she was otherwise qualified to

perform lateral positions which require previous grocery clerk experience because it is

17

undisputed that she cannot provide evidence of such prior experience.  As to other positions,

King Soopers asserts that Plaintiff would not have been able to perform the essential functions of

those positions in that regular attendance is an essential job function of all the retail positions at

King Soopers.  Because Plaintiff acknowledges that she would have required as much as five

days of leave every three weeks during her chemotherapy treatment, King Soopers argues that

accommodation of such an recurring, sporadic and unpredictable leave was not reasonable.

However, as I have discussed *supra*, I conclude that Plaintiff has met her burden to show

that such accommodation would have been facially reasonable, and there are sufficient material

issues of fact as to whether intermittent leave for chemotherapy would have been a reasonable

accommodation to preclude summary judgment.  As a result, I conclude that with regard to an

accommodation of a possible transfer or reassignment, Plaintiff has met her burden of facial

reasonableness.

## C.  INTERACTIVE PROCESS

Finally, I address Plaintiff's argument she is entitled to summary judgment in that King

Soopers violated the ADA by failing to engage in the interactive process to determinate if

reasonable accommodations were available for Plaintiff.

Under the ADA's implementing regulations, once a qualified individual informs her

employer of a disability, the employer must then engage the employee in an interactive process

to determine if there is a reasonable accommodation.  29 C.F.R. § 1630.2(o)(3); *see also*

*Hendricks-Robinson v. Excel Corp.,*154 F.3d 685, 693 (7th Cri. 1998).  An employer must make

a reasonable effort to explore the accommodation possibilities with the employee.  *Id.*  "The

obligation to engage in an interactive process is inherent in the statutory obligation to offer a

reasonable accommodation to an otherwise qualified disabled employee." *Smith v. Midland Brake, supra,* 180 F.3d at 1172.

Based on my determination that Plaintiff has met her burden to show facially reasonable accommodations, as discussed *supra*, I reject King Soopers' argument that it was not required to engage in the interactive process because Plaintiff cannot show that any reasonable accommodation existed.   King Soopers also argues that the undisputed facts demonstrate that it "actually did engage in the interactive process" but that any failure to identify a reasonable accommodation can be "traced to [Plaintiff's] unwillingness or inability to provide important and necessary information regarding her condition, treatment and prognosis." *See Templeton v. Neodata Services, Inc.*, 162 F.3d 617, 619 (10th Cir. 1998)(finding that the employee's failure to provide medical information necessary to the interactive process precludes her from claiming that the employer violated the ADA by failing to provide reasonable accommodation).

First, there are significant issues of material fact to be determined related to whether King Soopers did, in fact, engage in the interactive process.  For example, it is undisputed Mr. Conlin testified that he sought transfer positions on Plaintiff's behalf, but there is contrary deposition testimony about whether he was directed to obtain medical documentation from Plaintiff regarding her condition.  Additionally, Ms. Bouknight testified that she never considered providing Plaintiff with accommodation because "she did not consider her disabled underneath the act, " and so testified in her deposition that she did not "engage in the interactive process with respect to" Plaintiff.   Finally, as discussed *supra*, there are disputed issues of fact as to whether Plaintiff provided King Soopers with sufficient information related to her impairment, diagnosis and the duration of her treatment prior to her termination.  *See Hines v.*

*Chrysler Corp.,* 231 F.Supp.2d 1027, 1046-47 (D.Colo. 2002)(finding that issues of material fact

existed as to whether the employer participated in the interactive process precluding summary judgment).

Therefore, I again find that these disputed issues of fact preclude summary judgment on

the question of whether the duty to engage in the interactive process was triggered, whether

Plaintiff provided sufficient information to engage the process and, if so, whether King Soopers

made a reasonable effort to explore the accommodation possibilities with the employee.

## V.  CONCLUSION

Because I have determined that Plaintiff has met her burden of establishing her *prima*

*facie* case of discrimination for failure to provide reasonable accommodation,  King Soopers is

not entitled to summary judgment in its favor.  In addition, because I have found significant

material issues of fact exist whether Plaintiff was qualified, whether King Soopers failed to make

reasonable accommodations, and whether it engaged in the interactive process, Plaintiff is

likewise not entitled to summary judgment in her favor.

ACCORDINGLY, I DENY both Plaintiff's Motion for Partial Summary Judgment [**Doc**

**# 66**] and Defendant's Motion for Summary Judgment and Brief in Support [**Doc #67**].

Dated: February   _28_ , 2012 in Denver, Colorado.

BY THE COURT:

_s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE